# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3348 | **DATE** | 10/31/2001 |
| **CASE TITLE** | Garfield Phillips vs. John Mezera, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion to dismiss the Second Amended Complaint (Doc. No. 25-1) is granted in part and denied in part. Defendants are directed to answer the allegations set forth in Counts I and II of the Second Amended Complaint on or before November 29, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 01 2001 date docketed | |
| | Notified counsel by telephone. | | | 33 |
| | Docketing to mail notices. | | Cm docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 10/31/2001 date mailed notice | |
| ETV | courtroom deputy's initials | 01 OCT 31 PM 5:05 Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GARFIELD PHILLIPS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN MEZERA, JAMES SHAPARD, ) <br> JOYCE TOSO, MARY KUCHARZ and ) <br> CITY OF JOLIET, ) <br> ) <br> Defendants. ) | No. 00 C 3348 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff Garfield Phillips ("Phillips"), pro se, claims that Joliet officials violated his civil rights when they declared his rental property unfit for human habitation and evicted his tenants. On February 21, 2001, this court dismissed Plaintiff's amended complaint for failure to state a claim, but granted him leave to file a second amended complaint if he could cure the deficiencies in the earlier pleading. On March 14, 2001, Plaintiff filed his second amended *pro se* complaint against the City of Joliet and Joliet officials John Mezera ("Mezera"), James Shapard ("Shapard"), Joyce Toso ("Toso"), and Mary Kucharz ("Kucharz"). In the second amended complaint, Plaintiff again alleges that Defendants violated his civil rights when they evicted tenants from rental property he owns and interfered in the renewal of his HUD Section 8 Moderate Housing Contract. He further alleges that Defendants negligently failed to comply with the City's own policies. Defendant has once again moved to dismiss for failure to state a claim.

A *pro se* complaint is held to "less stringent standards than formal pleadings

drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and can be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A *pro se* complainant can, nevertheless "plead himself out of court" by pleading facts that undermine the allegations set forth in his complaint. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## FACTS

In considering Defendants' motion to dismiss, the court presumes that all allegations in the Plaintiff's complaint are true. *Leatherman v. Tarrant County Narcotics & Intelligence Unit*, 507 U.S. 163, 164-65 (1993). To provide as complete a chronology as possible, the court refers not only to the allegations of the Second Amended Complaint, but also to the First Amended Complaint. In December 1994, Plaintiff purchased a two-unit rental property at 26-28 Union Street ("property") in Joliet. (Second Amended Complaint ¶ 12.) Plaintiff alleges that two items were transferred to him as part of the property transaction: a four-year Certificate of Inspection issued by the City of Joliet to the previous owner in December 1994 and a fifteen-year HUD Section 8 Moderate Housing Contract issued on April 1, 1985 by the Housing Authority of Joliet ("HAJ") entitling Plaintiff to maintain pre-existing tenants in the property. (*Id.* ¶¶ 11,14.)

On January 16, 1998, an inspector for HAJ conducted an inspection of Phillips' property and issued a Summary of Inspection listing various repairs to be made to the

property by February 23, 1998. (*Id.* ¶ 19; HAJ Summary of Inspection, Ex. A to Second Amended Complaint.) On March 2, 1998, an inspector for HAJ provided Plaintiff with an Approved Summary of Inspection showing he had completed the repairs required by the first inspection. (Second Amended Complaint ¶ 20; HAJ Summary of Inspection, Ex. B to Second Amended Complaint.)

On March 11, 1998, Kenneth Alexander ("Alexander"), an inspector from Joliet's Neighborhood Services Department posted a "Bldg. Code document" on Phillip's property. Although Plaintiff has not otherwise described the document, he alleges that Alexander posted it because he could not enter the property to conduct an inspection. (Second Amended Complaint ¶ 21.) On March 12, 1998, Alexander told Plaintiff he would send written notification of the re-scheduled inspection. (*Id.* ¶ 22.)

On April 29, 1998, Joliet's Neighborhood Service Department conducted a hearing regarding Phillips' property, pursuant to notice. (*Id.* ¶ 23.) Plaintiff's complaint does not identify the purpose, findings, or outcome of this hearing. In his earlier complaint, Plaintiff did allege that Defendant Toso, the City's Property Maintenance Coordinator, advised him during the hearing "that he had not paid the $220.00 Inspection Fees and that there existed some minor Bldg. Code violations that needed to be corrected" at the property. (Amended Complaint at ¶ 26(a).) Defendant Toso informed Plaintiff that he would not be given additional time to cure the violations. (*Id.* ¶ 26(c).) Plaintiff claims that at the hearing, a police officer confirmed that the exterior of the property was in good condition and that there were no public disturbances calls regarding the property. (Second Amended Complaint ¶ 24.)

3

Plaintiff also alleges that at the hearing, Defendant Shepard, in a "loud and intimidating voice" told him, "I'm gonna put you out of business, we're gonna shut you down." (*Id.* at ¶ 25(a).)

A reinspection of Plaintiff's property took place the following day, April 30, 1998. (Notice of Property Maintenance Code Violations, Ex. C to Second Amended Complaint.) Plaintiff received a "Notice of Property Maintenance Code Violations" dated May 5, 1998 from Defendant Toso resulting from that inspection. The Notice explains that Plaintiff's property had "recently been inspected for compliance with the BOCA National Property Maintenance Code [as] required by Section 8-152 of the Joliet Code of Ordinances." (Second Amended Complaint at ¶ 26, Ex. C to Second Amended Complaint.) The notice contained a list of 26 code violations discovered during the inspection–including broken windows, a defective stove, defective ceiling and floor coverings, and broken or missing electric fixtures–and set forth a recommended procedure for correcting each violation. (*Id.*) The Notice also stated that the property would be reinspected and that all code violations must be corrected before reinspection. (*Id.*) Further, the Notice stated, "failure to correct the violations may result in legal action." (*Id.*) The Notice explained Plaintiff had "the right to a hearing concerning [the] notice" and in order to exercise such right he must file a "written hearing request with the City Manager within 72 hours of receiving [the] notice." (*Id.*) Finally, the Notice explained that the violations set forth in it were only those pertaining to the BOCA National Property Maintenance Code, and correction of those violations would not relieve Plaintiff from bringing the property into full compliance with all applicable

legal requirements, including the Joliet Zoning Ordinance. (*Id.*) The record does not indicate what exactly the "BOCA National Property Maintenance Code" is, nor has Plaintiff alleged that he filed a timely request for a hearing.

Around June 3, 1998, Plaintiff paid an inspection fee of $220.00 for his property and asked Defendant Shapard, the Deputy City Manager, for further additional time to correct the alleged building code violations. (Amended Complaint ¶ 26(g).) Shapard responded by saying, "I cannot reverse my decision, as a matter of fact I spoke with Mezera and informed him that I condemned the building and Mezera jumped for joy." (*Id.* ¶ 26(g); Second Amended Complaint ¶ 27(a).) After this conversation with Shapard, Plaintiff encountered Defendant Mezera, Joliet City Manager, and informed him that Plaintiff had Chapter 13 bankruptcy protection and that the HAJ had granted him a year recertification for his HUD Section 8 Housing Contract for the property. (Amended Complaint ¶ 26(j), (m); Second Amended Complaint ¶ 27.) Mezera responded by asking Plaintiff if he was "watching the Bulls when he should have been getting his property repaired." (Second Amended Complaint ¶ 27(b).) Mezera urged Plaintiff to "give the house back to the bank" and accused him of "renting to gangbangers . . . [who] are selling drugs from that house." (*Id.*) Mezera also threatened to "call HAJ and have [Plaintiff] Section 8 certification cancelled because there should not be any Section 8 tenants living in the 28 Union Street Premises." (Amended Complaint ¶ 26(m).)

Also around June 3, 1998, City Officials allegedly terminated water service to the property and directed police to tell Phillips' tenants they had to move out. (Second

5

Amended Complaint ¶ 28.) Plaintiff alleges these actions were taken "without any lawful justification" but Plaintiff does not claim he had corrected any outstanding code violations brought to his attention either at the April 29 hearing or during the April 30 BOCA inspection. (*Id.* ¶ 28.) On June 6, 1998, Plaintiff received a Notice of Emergency Condemnation. (Id. ¶ 31; Notice of Emergency Condemnation, Ex. E to Second Amended Complaint.) That same day Plaintiff's tenants received a Notice to Tenants to Vacate Unsafe Property. (Second Amended Complaint ¶ 31; Notice to Tenants to Vacate Unsafe Property, Ex. F to Second Amended Complaint.) Around June 8, 1998 Plaintiff presented Shapard with a notice of appeal from the condemnation decision. (Second Amended Complaint ¶ 32; Phillips Letter, Ex. G to Second Amended Complaint.) Defendant Kucharz, Assistant Corporate Counsel for Joliet, promised Plaintiff that there would be a hearing on his appeal after Mezera's return from an out of town trip, but no such hearing has ever taken place. (*Id.* ¶¶ 33-34.)

Plaintiff alleges "that prior to Defendant Joliet's forceful removal of the original door locks from off the doors and the placing of Defendant Joliet's padlocks on the doors of . . . [the property] . . . Defendant Joliet did not convene a formal administrative hearing on [Plaintiff's] timely filed Notice of Appeal . . . as provided to other citizens under similar circumstances." (*Id.* ¶ 35.) He also alleges that Defendants failed to obtain a court order from the Circuit Court of the Twelfth Judicial Circuit authorizing action against Plaintiff's property as required by 65 ILCS 5/11-31-1(a). (*Id.* ¶ 36.) Plaintiff admits that code violations existed at his property but contends

6

they "did not rise to a critical level which necessitated the need to either declare the property as being unsafe for occupancy . . . ." (*Id.* ¶ 39.)

Around July 10, 1998, the HAJ issued Plaintiff a written notice terminating the March 2, 1998 recertification of his HUD Section 8 Moderate Housing Rehabilitation Contract because "documentation received from the City of Joliet and the hearings held with [Plaintiff] and the City of Joliet [showed Plaintiff did] not have an inspection permit to rent [the property] and the property is considered unfit for human habitation." (*Id.* ¶ 37; Housing Authority letter, Ex. I to Second Amended Complaint.) The HAJ concluded that it was required to terminate [Plaintiff's] Moderate Rehabilitation Contract and use that funding to allow [Plaintiff's tenant] to relocate." (Second Amended Complaint; Ex. I to Second Amended Complaint.) Plaintiff alleges that as "a direct and proximate result of defendant(s) . . . concerted actions and/or inaction . . . Phillips' HUD Section 8 Moderate Housing Contract was terminated . . .". (Second Amended Complaint ¶ 41.)

Plaintiff believes these allegations support five claims. In Count I, he alleges a violation of the guarantee under 42 U.S.C. § 1981 (a) that he have equal rights to make and enforce contracts as white citizens. Count II alleges a violation of the guarantee under 42 U.S.C. § 1982 that he have the same rights to own property as enjoyed by white citizens. Count III is a claim under 42 U.S.C. § 1983 that the individual Defendants have deprived him of property without due process. Count IV asserts a similar claim against Defendant City of Joliet. Count V alleges that Defendants were negligent in failing to act with reasonable and due care, and to

7

comply with City Ordinances and Illinois statutes.

Defendants have moved to dismiss all five claims for failure to state a claim for relief. They contend that Plaintiff was not denied due process since he was granted a hearing concerning code violations at his property on April 29, 1998. To the extent that Phillips' allegations concerning state law establish a claim, Defendants urge that because Joliet is an Illinois home-rule municipality pursuant to Article VII of the Illinois Constitution, they are not required to adhere to state laws contrary to local ordinances. Therefore Defendants were not required to obtain a court order to "condemn" Plaintiff's property. They also assert that Plaintiff's allegations do not support the claim that he was treated differently than white property owners under similar circumstances, and that any alleged negligence in connection with failure to follow City policies does not support a claim for relief. The court addresses these arguments in turn.

## DISCUSSION

### A.    Unequal Treatment

In Counts I and II, Plaintiff alleges violations of 42 U.S.C. §§ 1981(a) and 1982, which guarantee that all citizens will have the same rights as white citizens to make and enforce contracts and to lease and convey real property. Because of their common origin in the Civil Rights Act of 1866 and their common purpose, § 1981 and § 1982 are generally construed in tandem. *See Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439-40 (1973). To state a claim under either of these provisions, Plaintiff must allege that 1) he is a member of a racial minority; 2) Defendants had an intent

to discriminate on the basis of race; and 3) the discrimination concerned activities enumerated in the statutes (i.e. making and enforcing a contract or owning property). *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

In Counts I and II, Plaintiff alleges that Defendants were motivated by "racial animus" in bringing about the termination of Plaintiff's HUD Section 8 Moderate Housing Contract and interfering with Plaintiff's property rights in the rental units. Plaintiff further alleges that Defendants "have never done [such things] to any other citizen either under similar circumstances or similarly situated." Read narrowly, Plaintiff's complaint alleges discrimination, without explicitly identifying an underlying racial basis. In assessing a motion to dismiss, however, it is not this court's job to read complaints narrowly. Within the context of Plaintiff's complaint, it can be reasonably inferred that Plaintiff intends to attribute the allegedly inconsistent conduct on the part of Joliet officials to their "racial animus." In light of the obligation to liberally construe complaints by pro se plaintiffs, *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2001), and the Seventh Circuit's holding that complaints may plead conclusions without alleging all the facts entailed by the claim, *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998), the court denies Defendants' motion to dismiss Plaintiff's § 1981(a) and § 1982 claims.

## B. Deprivation without Due Process

In Counts III and IV, Plaintiff claims Defendants deprived him of his property rights without due process. First, Plaintiff contends he was deprived of a protected interest in renting his property without due process because he was not granted a post-

9

deprivation hearing after his tenants were evicted. Defendants point out that Plaintiff's own allegations show he was given notice and an opportunity to be heard, fulfilling the mandates of due process, before his tenants were evicted. Plaintiff's earlier amended complaint and his more recent complaint allege that he was granted a hearing on April 29, 1998 and that code violations were addressed at this meeting. Violations were again brought to the Plaintiff's attention after a re-inspection on April 30, 1998. Plaintiffced was advised of his right to a hearing in order to contest these violations. In his very detailed complaint, he does not allege having requested such a hearing.

Plaintiff's property was then declared unfit for human habitation and condemned, after which Plaintiff filed a timely appeal.[1] Plaintiff alleges that although Defendant Kucharz told him there would be a hearing on Plaintiff's appeal, no such hearing ever took place. Defendants' alleged failure to conduct a hearing on Plaintiff's challenge to the condemnation of his property is puzzling. Notably, however, Plaintiff's own allegations demonstrate that he was granted a pre-deprivation hearing, and he has not alleged that he had any new basis for further challenging Defendants' decision to evict his tenants. He has not even alleged that his property was free of the building code violations that resulted in the condemnation; instead, he alleges that the violations were not so serious that the property was unfit for habitation. At the pre-

---

[1] The notice informing Plaintiff that his property had been condemned mentions that his right to "seek review, modification or withdrawal" exists for only 72 hours from receipt of the letter. (Ex. E to Second Amended Complaint.) The text of the notice does not mention a hearing, much less explicitly create the right to one.

10

deprivation hearing on April 29, and again on June 3, 1998, Plaintiff appealed to Joliet officials for additional time to cure the violations. Their refusal to allow additional time does not constitute a denial of due process. Nor does their disagreement with Plaintiff's assessment of the seriousness of the code violations indicate that his constitutional rights have been violated.

Plaintiff next contends he was deprived of a protected property interest in renting his property without due process because Defendants did not obtain a court order before condemning his property as required by 65 ILCS 5/11-31-1. Defendants observe that because the City of Joliet is a home-rule municipality as defined by Article VII of the Illinois Constitution, it has the power to legislate concurrently with, and contrary to, the State of Illinois. Once the City adopts ordinances contrary to Illinois state statutes, the ordinances prevail unless the General Assembly has specifically preempted a home rule exercise of power. *See generally People of the State of Illinois ex rel. Ryan v. Village of Hanover Park*, 311 Ill. App. 3d 515, 524-25, 724 N.E.2d 132, 138 (1st Dist. 1999); *Demick v. City of Joliet*, 135 F. Supp. 2d 921 (N.D. Ill. 2001). No such preemption provision appears in this state statute cited by Plaintiff and therefore if the City has legislated otherwise, it was not necessary for Defendants to obtain a court order. Even if the City has not legislated otherwise, the mere fact that Defendants may have violated some provision of state law does not necessarily establish a deprivation of federal rights. *See Pierce v. Village of Divernon*, 17 F.3d 1074, 1079 (7th Cir. 1994) ("Plaintiffs' due process claim [challenging Village's demolition of their home] does not necessarily require us to determine whether the

Village complied with the requisite Illinois procedures, but only whether the procedures actually followed were consistent with due process.") The court concludes that Plaintiff's complaint does not state a claim for deprivation of due process.

C. **Negligence**

In Count V, Plaintiff alleges that City officials acted negligently in failing to carry out the City's own stated policies. Plaintiff alleges that the individual Defendants breached three duties: a) to comply with the aforementioned 65 ILCS 5/11-31-1.; b) to comply with Defendant Joliet's policy providing for formal Administrative hearing on timely filed notice of appeal; and c) to comply with a city ordinance in promoting faith and confidence of the citizens in their government.

The court concludes that none of these allegations adequately states a claim. First, for the reasons mentioned above, it is not clear that the individual Defendants had a legal duty to comply with the Illinois statute if it conflicted with an ordinance in their home-rule municipality. Second, there is no legal basis for Plaintiff's claim that Joliet had a policy of providing formal administrative hearings for time appeals to condemnation notices. Plaintiff's allegation of such a policy rests on a misreading of the Notice. Finally, even if Plaintiff has correctly identified a municipal duty to promote the faith of citizens in good government, this court concludes that there is no private right of action to enforce such a duty.[2]

---

[2] Without ruling on an issue not briefed by the parties, the Court notes that even a cognizable claim of negligence against Defendants might be barred by the Illinois Tort Immunity Act. *See, e.g.*, 745 ILCS 10/2-201 (providing that "a public
(continued...)

## CONCLUSION

Defendants' motion to dismiss the Second Amended Complaint (Doc. No. 25-1) is granted in part and denied in part. Plaintiff's allegations do not support a claim that he was deprived of a property interest without due process. Accordingly, Counts III and IV of Plaintiff's Second Amended Complaint are dismissed with prejudice. Similarly, Plaintiff does not state a legally cognizable claim in tort, and Count V of his Second Amended Complaint is dismissed with prejudice. Plaintiff has stated a cognizable claim of racial discrimination, however, and Defendants' motion to dismiss Counts I and II of the Second Amended Complaint are denied. Defendants are directed to answer the allegations set forth in those Counts on or before November 19, 2001.

ENTER:

Dated: October 31, 2001

REBECCA R. PALLMEYER
United States District Judge

---

²(...continued)
employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused"); and 745 ILCS 10/2-109 (providing that a local public entity is not liable "for an injury resulting from an act or omission of its employee where the employee is not liable"). *See also Village of Bloomingdale v. CDG Enters., Inc.*, 196 Ill.2d 484, 493, 752 N.E.2d 1090, 1098 (2001) (under Illinois Tort Immunity Act, statutory immunity applies even where conduct is motivated by "corrupt or malicious motives").